**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **CLINT L. CALIP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. CIV-08-15-L** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for supplemental security income and disability insurance benefits. United States District Judge Tim Leonard referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). The Commissioner has answered and filed the administrative record (hereinafter Tr. ____). As the parties have briefed their respective positions, the matter is now at issue. For the following reasons, it is recommended that the decision of the Commissioner be reversed and the matter be remanded for further administrative proceedings consistent with this Report and Recommendation.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for supplemental security income and disability insurance benefits on November 18, 2004, alleging an inability to work since August 20,

2003, based on scoliosis, status post dorsal fusion, and status post right wrist fusion.  Tr. 44, 59, 74-76, 93, 131, 189, 190-93. Plaintiff's applications were denied initially and on reconsideration at the administrative level.  Tr.  38, 39, 44-46, 48-51,, 182-84, 185-88. Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on February 13, 2007.  42, 194-251.  Plaintiff appeared in person with his non-attorney representative and offered testimony in support of his applications.  Tr. 196, 198-236. A vocational expert also testified at the request of the administrative law judge. Tr. 31, 236-47. The administrative law judge issued his decision on June 29, 2007, finding that Plaintiff was not disabled.  Tr. 13-15, 16-25.  The Appeals Council denied Plaintiff's request for review on November 8, 2007, and the decision of the administrative law judge thereby became the final decision of the Commissioner.  Tr. 4-6.

## II.  THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process required by 20 C.F.R. §§ 404.1520, 416.920.  Tr. 17-18. He first determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of August 20, 2003. Tr. 18.  At steps two and three, the administrative law judge determined that Plaintiff suffers from status post dorsal fusion, status post right wrist fusion, and scoliosis, all of which he found to be severe impairments, but he found no impairment or combination of impairments to meet or equal the criteria of any listed impairment described in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations. Tr. 18-19.  The administrative law judge next determined that Plaintiff

has the residual functional capacity (RFC) to perform a limited range of light work.  Tr. 19. Specifically, the administrative law judge found the following RFC: that Plaintiff can occasionally lift and carry 20 pounds (including upward pulling); frequently lift and carry 10 pounds (including upward pulling); sit/stand for 6 hours in an 8 hour day (with normal breaks); has the unlimited ability to push and pull – including the operation of hand and/or foot controls – up to the pounds specified above; he has a normal gait and can heel and toe walk; has reasonable intrinsic strength in his fingers; has a reduced range of motion in his neck, right shoulder, right wrist and right hand; is unable to lift overhead with the right arm, can oppose his thumb to his fingertips on the left hand but not on the right; can manipulate small objects with his left hand but not on the right; can grasp tools effectively with the left hand but not the right; is deaf in the right ear, but can hear a conversational voice and have a telephone conversation with his left ear. Tr. 19. Based on this RFC, and the testimony of a vocational expert, the administrative law judge determined at step four that Plaintiff cannot perform his past relevant work of stock clerk, light truck driver, material handler, or agricultural laborer. Tr. 23.  However, based on the Medical-Vocational guidelines and the testimony of the vocational expert, the administrative law judge found that a person with Plaintiff's vocational factors and RFC could perform other work that exists in significant numbers in the economy, such as information clerk, telephone quotation clerk, and food and beverage order clerk.  Tr. 23-24.  Accordingly, the administrative law judge found Plaintiff not disabled and not entitled to benefits.  Tr. 24-25.

## III.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it.  The agency's failure to apply correct legal standards, or show us it has done so, is also grounds for reversal.  Finally, because our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight.  However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (quotations, brackets, and citations omitted).  To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520; 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).  The claimant bears the burden to establish a prima facie case of disability at steps one through four.  Williams, 844 F.2d at 751 and n.2. If the claimant successfully carries his burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity ("RFC") to perform work in the national economy given his age, education, and work experience.  Id. at 751.

## IV.  PLAINTIFF'S CLAIMS ON APPEAL

On appeal, Plaintiff raises three errors. First, he claims that the administrative law judge relied upon vocational expert testimony that conflicted with the Dictionary of Occupational Titles without obtaining a reasonable explanation.   Plaintiff's Opening Brief, p. 10.  Second, he claims that the administrative law judge's step five finding is not supported by substantial evidence.  Id. at 14.  Third, Plaintiff claims that the administrative law judge's RFC finding is not supported by substantial evidence with respect to his cervical limitations. Id. at 19.  Because the undersigned finds Plaintiff's second claim of error to be dispositive of this appeal, it will be addressed first.

### A.  Whether the Administrative Law Judge's Step Five Finding is Supported by Substantial Evidence in Light of Plaintiff's Cervical Spine Limitations

As part of his second claim on appeal, Plaintiff argues that the administrative law judge's failure to specifically include Plaintiff's virtually immobile cervical spine in the hypothetical he posed to the vocational expert renders that testimony insufficient to support his finding at step five.  Id. at 17-18.

The Commissioner does not specifically address this claim; [1] however, it is well established that   "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991)

---

[1]The Commissioner only addressed the issue of Plaintiff's neck limitations in the context of his response to Plaintiff's claim that the administrative law judge's RFC finding was not supported by substantial evidence. See Commissioner's Brief, p. 7.

(quotation omitted).  In this case, the undersigned agrees with Plaintiff that the administrative law judge's step five finding is not supported by substantial evidence due to his failure to clarify the extent of Plaintiff's cervical spine limitation.

In posing the hypothetical to the vocational expert, the administrative law judge incorporated two portions[2] of the medical record: a one-page letter from consultative examining physician Dr. Thomas, Tr. 156, and the Physical Residual Functional Capacity Assessment of agency medical consultant Dr. Glass, Tr. 158-165.  The letter from Dr. Thomas was in response to a request for information regarding Plaintiff's manipulative ability, and Dr. Thomas opined that Plaintiff has the ability to oppose the left thumb but not the right, the ability to manipulate small objects with the left hand but not the right, and the ability to grasp tools effectively with the left hand but not the right. Tr. 156.  The RFC Assessment indicated dorsal fusion, right wrist fusion, right forearm atrophy, limited flexion in the right wrist, reasonable intrinsic strength and good oppositional strength in the right hand, and "reduced range of motion in neck, right shoulder, right wrist, and right hand."  Tr. 159.  The RFC Assessment also indicated pain and some tenderness, normal gait, and ability to heel and toe walk.  Id.

After bringing these exhibits to the vocational expert's attention, the administrative law judge asked "[i]f there's anything of a vocational nature that I have not yet discussed with you and you saw it, let me know."  Tr. 240.  At that point, the vocational expert asked

---

[2]In the record before the administrative law judge, these exhibits were marked as 4F and 6F.

about the exhibit containing the examination findings of consultative examiner Dr. Thomas

with regard to Plaintiff's cervical spine:

A. [BY THE VOCATIONAL EXPERT]: What about 3F?

Q. [BY THE ADMINISTRATIVE LAW JUDGE]: Hum?

A.  3F when the doctor - -

Q.  No, no it was 4F - -

A.  No, but I said what about it.  You might want to look at that, that he - -

Q.  Oh, that was the CE report?

A.  Yes, that's where they show the very limited in the neck extension and the flexion.  I mean I know you said no lifting overhead with the right arm.

Q.  You're talking about the sheet, the range of (INAUDIBLE) motion  - -

A.  Yes.

Q.  - - evaluation chart?

A.  There's some  - -

Q.  And the - - I guess there were a couple of charts.  There was a  - -

A.  It's page 4 and 5.

Q.  back, back sheet, lumbo-spine sheet, and either they didn't give it to him or he didn't fill out the, the hand sheet, and that's why they had to get this - - Exhibit 4F was - - because - -

A.  Yes.

Q.  You know there's usually three sheets that they're looking at.  One's the back and all that.  I think this was the hand sheet.  It says you requested information from me on whether Mr. Calip can oppose his thumb to finger - - in other words what they're talking about - -

A.  Right.

Q.  - - the sheet that covers the handling and the fine finger manipulation and stuff like that.  I don't think that sheet was in there, was it from the CE?

A.  Well, I was looking at page four, restrictions on the neck - -

Q.  Yeah, they did the point motion.

A.  - - and then on page six the range of motion  - -

Q.  And they did the lumbrosacral spine - -

A.  - - with the cervical spine.

Q.  But they didn't do the hand sheet.

A.  Right.

Q.  And that's, that's what the point of Exhibit 4F was.  Right.  Okay, well, you'll be invited to ask any questions that you wish to on 3F, too. I - - when - - yeah, after I'm done, you'll be invited to ask any and all questions you wish concerning 3F limitations or any other limitations - -

A.  Yes.

Q.  - - from this file from any other source.

A. Yeah.

Q.  That's fine to ask him those things.  Okay, I haven't handed this to yet (sic) have I?  So that's what I'm looking at right now and *my questions are 6F and 4F.*

Tr. 240-42 (emphasis added).  The administrative law judge then asked the vocational expert

whether there were "any other limitations that I did not articulate on these things that I didn't

cover?"  Tr. 242.  At that point, the vocational expert again asked about limitations in the

cervical spine, this time referencing one of the exhibits incorporated by the administrative

law judge as part of his hypothetical, the RFC Assessment (Exhibit 6F):

>    A.  On page 2 of 6F, I noticed she'd mentioned something about the range of
>    motion in the neck and there  - -
>
>    Q.  Yes.
>
>    A.  - - it does say reduced range of motion in neck, right shoulder as well as
>    right wrist and right hand on  - -
>
>    Q.  Right.
>
>    A.  - - on that hand.
>
>    Q.   Right, I want you to assume all of that's true for purposes of my
>    hypothetical.  Okay.
>
>    A.  I've got it.

Tr. 242-43.  From this colloquy it appears that the vocational expert was asked to base her

answer with regard to the effect of any cervical spine limitation on the medical consultant's

description ("reduced") instead of the examination findings of Dr. Thomas.  Dr. Thomas'

examination findings with regard to Plaintiff's neck were:

>    His neck is fused. He is only able to move his neck about 10 degrees to the
>    left, five degrees to the right, five degrees in extension and about 10 degrees
>    in flexion.  All of these cause pain. His entire neck is basically fused and it is
>    tilted to the right about 10 degrees.

Tr. 151.  Dr. Thomas referenced the severity of the cervical spine limitation two more times

in his report:  "The neck has no crepitance in that it is basically fused." Id.  "His neck and

dorsal spine are essentially fused."  Id. at 152.

Although the administrative law judge instructed the vocational expert to adopt the finding of a "reduced" range of motion, he did not specify the precise extent of the reduction. Moreover, it appears from her questions to the administrative law judge that the degree of limitation in Plaintiff's cervical spine was significant to the vocational expert.

The Tenth Circuit Court of Appeals addressed a similar deficiency in <u>Cason v. Sullivan</u>, No. 92-7105, 1993 WL 128878 (10th Cir. Apr. 21, 1993).[3]  In that case, the plaintiff also had severe limitation in his cervical spine caused by a previous spinal fusion. <u>Id.</u> at *1.  The Court noted that he could not "turn his head significantly in either direction or look up or down on a sustained basis...." <u>Id.</u>  In a step-five decision, the administrative law judge asked the vocational expert to assume that the claimant should avoid repetitive neck movements and jarring of the neck. <u>Id.</u> at *2. The vocational expert opined that this would eliminate the sedentary jobs and "benchwork assembly," but he did not specify the "critical 'degree of limitation' at which he thought the remaining available jobs would be precluded (to establish a bench mark for assessing the occupational effect of plaintiff's demonstrated cervical impairment)." <u>Id.</u>  Moreover, the Court found that the administrative law judge did not "cure this omission from the other direction by following up with a hypothetical question incorporating a more specific degree of cervical impairment based on the medical evidence." <u>Id.</u>  Because of this, the Court held that the decision of the administrative law judge was not supported by substantial evidence:

---

[3]This and any other unpublished disposition are cited pursuant to Fed. R. App. P. 32.1 and Tenth Cir. R. 32.1.

We have already alluded to the second, broader problem with the [administrative law judge's] analysis, i.e., the lack of a direct, decisive conclusion from the vocational expert regarding the full occupational effect of plaintiff's cervical impairment. Unless and until either (1) the expert identifies a reasonably specific level of employment-precluding (or employment-permitting) limitation against which the [administrative law judge] can assess the effect of plaintiff's condition, or (2) the [administrative law judge] incorporates a reasonably specific finding of plaintiff's cervical limitation in a proper hypothetical definitively answered by the vocational expert, we cannot say substantial evidence supports a determination of nondisability at step five.

Id. at *3.

Given the lack of any specification as to this limitation in the present case, the undersigned finds that the vocational expert's testimony does not constitute substantial evidence to support the administrative law judge's finding at step five. Accordingly, the decision should be reversed and remanded so that the administrative law judge can pose a hypothetical to the vocational expert that relates with precision his finding as to the degree of limitation in Plaintiff's cervical spine.

## B.  Remaining Claims of Error

### 1.  Conflict with the Dictionary of Occupational Titles.

Although the error described above is dispositive of this appeal, the undersigned will address Plaintiff's remaining claims of error for the purpose of guiding the parties upon remand. First, Plaintiff contends that the administrative law judge relied upon the testimony of the vocational expert, and that the testimony was in conflict with the Dictionary of Occupational Titles (DOT). Plaintiff's Opening Brief, p. 10. He claims that the administrative law judge's failure to obtain a reasonable explanation for the conflict is an

error of law.

The Commissioner responds that the administrative law judge did seek to identify any conflicts between the testimony of the vocational expert and the DOT, and found none. Commissioner's Brief, p. 9.  He also claims that the administrative law judge's conclusion that there was no conflict was correct because courts have refused to conclude that persons limited to using only one arm are precluded from performing work specifically requiring handling and fingering.  Id. at 9-10.

"An [administrative law judge] does have a duty to investigate and obtain a reasonable explanation for any conflict between the DOT and expert testimony before the [administrative law judge] may rely on the expert testimony as substantial evidence." Hackett v. Barnhart  475 F.3d 1166, 1171 (10th Cir. 2007) (citing Haddock v. Apfel, 196 F.3d 1084 (10th Cir. 1999)).  In this case, the administrative law judge's RFC finding included reasonable intrinsic strength in the fingers;  reduced range of motion in the neck, right shoulder, right wrist and right hand; inability to lift overhead with the right arm, ability to oppose thumb to fingertips on the left hand but not on the right; ability to manipulate small objects with the left hand but not  the right; and the ability to grasp tools effectively with the left hand but not the right.  Tr. 19.

According to the DOT, the job of information clerk requires frequent reaching and handling and occasional fingering.  See DOT § 237.367- 018; the job of telephone quotation clerk requires frequent reaching, handling and fingering, See DOT § 237.367-046, as does the job of food and beverage order clerk, see DOT 209.567-014.  Commissioner's Brief, Att.

4.  The DOT job descriptions do not address whether these jobs can or cannot be done by a person with the use of only one hand

The undersigned finds that the vocational expert's testimony that Plaintiff can perform the three identified jobs does not conflict with the DOT.  As argued by the Commissioner, courts have declined to find a conflict in similar circumstances.  For example, in Carey v. Apfel  230 F.3d 131 (5th Cir. 2000), the claimant also argued that the vocational expert's testimony that he could perform certain jobs with only one arm was in conflict with the DOT. The Fifth Circuit Court of Appeals characterized the claimed conflict as "tangential":

> We are not persuaded that the facts of this case present any actual conflict between the vocational expert's testimony and the DOT. The DOT does not contain any requirement of bilateral fingering ability or dexterity, and the vocational expert specifically testified that the jobs of cashier and ticket seller could be performed with the use of only one arm and hand. Moreover, Carey's counsel was given an opportunity to object or cross-examine the vocational expert on the affect of Carey's amputation on his ability to perform the identified jobs.
> ...
>
> Given the tangential nature of the conflict alleged here, we surmise that Carey's argument actually reduces to a factual disagreement about whether a person with one arm can perform a job requiring some degree of manual dexterity and fingering. The regulatory structure as well as the controlling precedent requires expert testimony on such issues, and there is no indication in this record that the vocational expert's testimony that Carey could perform those jobs with one arm and hand was incorrect.

Id. at 146 (citations omitted).  The Tenth Circuit Court of Appeals, relying on Carey, has held that vocational testimony is sometimes necessary to clarify how the DOT's broad descriptions apply to a specific case, and that such testimony does not equal a conflict. Segovia v. Astrue, No. 05-7008, 226 Fed.Appx. 801, 804 (10th Cir. Mar. 23, 2007)

(administrative law judge properly relied on vocational expert's testimony that claimant limited to occasional reaching could perform job despite DOT's broad categorization of the general reaching requirement as "frequent").  The Tenth Circuit found in yet another case that the administrative law judge had no further duty to investigate where the vocational expert testified that he relied on the DOT and the claimant failed to identify any discrepancies.  Gibbons v. Barnhart, No. 03-6021, 85 Fed.Appx. 88, 93 (10th Cir. Dec. 18, 2003) (to the extent there is implied or indirect conflict between vocational expert's testimony and the DOT, the administrative law judge may rely on the vocational expert's testimony) (quoting Carey).  Finally, in Trimiar v. Sullivan, 966 F.2d 1326, 1333 (10th Cir. 1992), the Tenth Circuit noted that vocational testimony was required when the light and sedentary occupational base has been eroded due to the claimant's loss of use of one arm. Logically then, there must be some jobs in those ranges that can be performed by a claimant who does not have bimanual dexterity.  Id. ("individuals are not expected to perform sedentary work *that requires the use of both hands*") (emphasis added).

Accordingly, because Plaintiff has failed to show that there is any conflict between the vocational expert's testimony and the DOT, and the DOT does not address whether bimanual handling and fingering is required in the three jobs she identified, the administrative law judge properly relied upon the vocational expert to clarify the DOT requirements as they apply to a person who only has the use of one hand.

**2.  Whether the Vocational Expert's Testimony Provided Substantial Evidence to Support the Administrative Law Judge's Finding that Other Work is Available to Plaintiff in Significant Numbers.**

14

As the other part of his second claim on appeal, Plaintiff argues that the administrative law judge's finding that other work exists in significant numbers is not supported by substantial evidence. Plaintiff's Opening Brief, p. 15-16. In an argument similar to that made in the above claim of error, he contends that the vocational expert's testimony was unclear as to whether the number of jobs she identified were further eroded by the lack of bimanual dexterity. Id. Thus, he concludes, her testimony is insufficient to meet the Commissioner's burden at step five. Id.

The Commissioner responds that the vocational expert testified as to the number of positions which existed in Oklahoma for each of the three jobs she identified, and that this testimony adequately supports the administrative law judge's finding. Commissioner's Brief, p. 12. Specifically, the Commissioner notes that the vocational expert testified there were 2,100 information clerk jobs, 600 telephone quotation clerk jobs, and 500 food and beverage clerk jobs available to a person with Plaintiff's RFC and vocational factors. Commissioner's Brief, p. 12, Tr. 245. The Commissioner contends that these numbers support a finding that jobs available to Plaintiff exist in significant numbers. In Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992), the Tenth Circuit noted that it "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here." Nevertheless, the Court recognized that "several factors" elucidate the analysis of the issue, including "'the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such

15

work.'" <u>Id.</u> (quoting <u>Jenkins v. Bowen</u>, 861 F.2d 1083, 1087 (8th Cir. 1988).

The undersigned finds that this issue will necessarily depend on the vocational expert's testimony on remand when a proper hypothetical question is posed.  But, <u>see</u> <u>Trimiar</u>, 966 F.2d at 1330, 1332 (holding that 650 to 900 jobs in Oklahoma is significant number of jobs); <u>Prince v. Apfel</u>, No. 97-5176, 1998 WL 317525 at *3 (10th Cir. June 11, 1998) (350 jobs in Oklahoma and 50,000 nationwide as a gate tender and 50 jobs in Oklahoma and 20,000 nationwide as a night watchman constituted significant number of jobs); <u>Rother v. Chater</u>, No. 96-6370, 1997 WL 196692 at *2 (10th Cir. April 23, 1997) (existence of 573 jobs in the local economy supported determination that claimant could perform work which exists in significant numbers in the local economy); <u>Scott v. Shalala</u>, No. 94-5083, 1994 WL 708217 at *2 (10th Cir. Dec. 21, 1994) (finding that work exists in significant numbers based on 195 lens cutter jobs in Oklahoma was supported by substantial evidence).

### 3.  Whether the RFC Determination is Supported by Substantial Evidence.

Finally, Plaintiff claims that the administrative law judge's RFC determination is not supported by substantial evidence due to his failure to specifically consider the severe nature of Plaintiff's cervical spine immobility.  Plaintiff's Brief, p. 19-21.  In support, he claims that the administrative law judge recited a single, general statement in his RFC finding that Plaintiff had "reduced range of motion in the neck."  <u>Id.</u> at 20.  He claims that his neck limitations should have been more specifically addressed by the administrative law judge, and provided to the vocational expert.  <u>Id.</u> at 21.

The Commissioner responds that the administrative law judge did specifically discuss the extent of Plaintiff's neck impairment when relating the findings of consultative examining physician Dr. Thomas.   Commissioner's Brief, p. 6-7.   He claims that the administrative law judge referred to Plaintiff's neck as "basically fused" and related Dr. Thomas' specific range of motion findings.  Id. (citing Tr. 21).

At step four, the administrative law judge must "assess the nature and extent of the claimant's physical limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis." Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999) (internal quotations omitted).  The administrative law judge has the duty to make specific and detailed predicate findings and to include a sufficient narrative discussion concerning a claimant's residual functional capacity. Social Security Ruling 96-8p, 1996 WL 374184, at *7 (stating that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, must contain a thorough discussion and analysis of the objective medical and other evidence, and must include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence); see also Winfrey v. Chater, 92 F.3d 1017, 1023-24 (10th Cir.1996) (describing the administrative law judge's responsibilities in assessing RFC under phase one of step four of the Commissioner's process).

In this case, the undersigned finds that the administrative law judge has not satisfied his duty to make a specific predicate finding with regard to Plaintiff's cervical spine limitation. As discussed above in the context of the administrative law judge's step five

17

finding, it appears from his hypothetical to the vocational expert that he found "reduced range of motion in his neck" to be something different from the range of motion findings contained in Dr. Thomas' consultative examination report. Tr. 19.  Accordingly, a more specific finding is necessary in order for the administrative law judge to relate the cervical spine limitation with sufficient precision to the vocational expert upon remand.

## **RECOMMENDATION**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and remanded for further proceedings consistent with this Report and Recommendation.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by January 8, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 19th day of December, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE